COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Bray and Bumgardner
Argued by teleconference


ELIZABETH HARRIS WILLIS, n/k/a
 M. ELIZABETH HARRIS
                                        MEMORANDUM OPINION[*] BY
v.    Record No. 2829-99-2        JUDGE RUDOLPH BUMGARDNER, III
                                              JUNE 27, 2000
RICKIE O. WILLIS


            FROM THE CIRCUIT COURT OF HENRICO COUNTY
                    George F. Tidey, Judge

          Deanna D. Cook (Bremner, Janus, Cook &
          Marcus, on brief), for appellant.

          No brief or argument for appellee.


     Elizabeth Harris Willis appeals the denial of her motion to

terminate Rickie Odell Willis' visitation with their minor

child.  For the following reason, we affirm.

     The parties, whose daughter was born January 1, 1994, were

divorced May 28, 1999.  Between November 1997 and November 1998,

the father had no contact with the child.  Finding "reasonable

suspicion that [the father] may have [sexually abused the

child]," the trial court ordered limited and strictly supervised

visitation.

     Beginning November 29, 1998, the father visited at the home

of the child's aunt for two hours three weekends in a row.  In

---

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

March 1999, the court granted supervised visitation for one and a half hours every other weekend. Visitations were to be videotaped, supervised, and reviewed within six months.

On June 24, 1999, the mother filed a motion to terminate the father's visitation, asserting it was not in the child's best interest. A hearing was held September 3, 1999, and two weeks later, the trial court appointed a guardian ad litem to investigate the effect limited visitation was having on the child. The guardian ad litem reported November 12, 1999 and recommended that visitation be suspended and the mother find a female counselor for the child. The court determined that it was in the child's best interests to maintain contact with the father and denied the motion to terminate.

The mother contends the trial court abused its discretion by putting the father's interests ahead of the child's. She argues the evidence established that it was not in the child's best interest to continue visitation.

In matters concerning visitation, we review the evidence, and the propriety of the trial court's decision, with the child's best interests as the primary, paramount, and controlling consideration. See Code § 20-124.2; Mullen v. Mullen, 188 Va. 259, 269, 49 S.E.2d 349, 354 (1948); Farley v. Farley, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795 (1990). "Absent clear evidence to the contrary . . ., the judgment of a trial court comes to an appellate court with a presumption that

-

the law was correctly applied to the facts," Bottoms v. Bottoms, 249 Va. 410, 414, 457 S.E.2d 102, 105 (1995) (citation omitted), and it will be reversed only for an abuse of discretion. See Farley, 9 Va. App. at 328, 387 S.E.2d at 795.

It is desirable for a child "to continue to receive the non-custodial parent's affection and nurture through the mechanism of visitation." M.E.D. v. J.P.M., 3 Va. App. 391, 397, 350 S.E.2d 215, 219 (1986) (citing Eichelberger v. Eichelberger, 2 Va. App. 409, 412, 345 S.E.2d 10, 12 (1986)). While visitation by a parent who has sexually abused a child "may not be in the child's best interest, . . . a court is not foreclosed from ordering some form of controlled visitation in order to rebuild a normal relationship if that is determined to be in the best interest of the child." Id. (citations omitted).

The evidence established that prior to the fall of 1998, the child was healthy, calm, loving, and gentle. However, once she started visiting with her father, her conduct and physical reaction to stress deteriorated. She became bossy to friends, angry, irritable, and withdrawn. She alternated between clingy and aggressive behavior with her mother and was both aggressive and physical with her father. The child's physical manifestations of stress included more prevalent constipation, regression in toilet training uncommon for a five-year old, headaches, stomachaches, vomiting, and nightmares. Her teacher observed these new symptoms and behaviors and considered them

-

severe because they affected the child's ability to learn and her self-esteem.

Dr. George Thomas Rowe, the child's pediatrician, recognized that the visitation schedule was "not a great deal of time" for the child to spend with her father. However, because the child associated those visits with anguish, he opined she would be better off if they ceased, because the benefits of visitation did not outweigh her reaction to them.

The child's therapist, Sanford C. Cassel, Ph.D., acknowledged that contact with the father might have some value to the child's therapy. Despite the child's varied reactions to the father, which ranged from anger to happiness, and concern for her safety, she was excited to see him. Dr. Cassel was concerned about some "sexualized play" between the father and the child and believed her "fairly intense and disruptive behavioral reaction" to the visits was consistent with that of a child who had been sexually traumatized. He opined that the visits should be terminated because re-traumatization would affect the child's health, and he did not think she was benefiting from them.

Paula Moody, the aunt who supervised the visits, observed the child act aggressively by hitting both herself and her father with toys, banging the toys on the ground, and calling her father names. Moody also believed that some of the play between them was sexual in nature: the child asked if the

-

father wanted to see her Barbie doll naked; referred to his penis as a snake; made moaning sounds; and claimed to be "kissing" a balloon while sucking it. This behavior was not normal behavior for the child.

The father started seeing a therapist, Dr. David A. Israel, in October of 1998 to improve his interaction with the child. Dr. Israel opined that even under normal circumstances, re-introducing a parent into a child's life is traumatic and most children become symptomatic. He believed the supervised and videotaped visits were "highly unusual," "abnormal," and "not a typical visitation arrangement." Thus, he believed the child's behavioral reactions to the visits were normal. Dr. Israel recommended the trial court lengthen the videotaped, supervised visitation, include the father's family in those visits, and that the father remain in counseling.

The guardian ad litem observed that although some of the child's interactions with the father were aggressive or seductive, she did not try to stay away from him, and he responded to her with positive parenting techniques. While the guardian advocated that visitation be suspended, a primary focus of her recommendation was that a female counselor, with whom the child would be more comfortable, be chosen for her. This recommendation stemmed from the child's April 1999 comment that she was "not going to talk to any man" about what happened to her.

-

Clearly, the child was reacting to the visits with the father.  It is not clear, however, that her negative reaction was the result of any sexual abuse.  On these facts, it was reasonable to conclude that the child was responding to the reaction of the adults around her, as well as to the unusual manner in which she visited with her father.  There was evidence in the record that the child would benefit from having contact with the father while she was in counseling.  The history of sexual abuse was insufficient to deny all contact between parent and child.  As a result, the trial court exercised its discretion in crafting the best solution to the conundrum.

The trial court considered all the evidence and determined that it was in the child's best interest to continue the strictly limited and supervised visitation.  This would still permit the mother to follow the guardian ad litem's recommendation of securing a new, female counselor.  The court appropriately considered the long-term goal of maintaining a relationship between the child and the non-custodial parent.  It reasonably determined that cutting off all contact would be more detrimental to the child than continuing supervised visitation with the father because that relationship would ultimately need to be resumed.

We conclude the trial court properly exercised its discretion in denying the motion to terminate visitation.  The court protected the child's right to have the nurture and

-

acceptance of the father, while protecting her from any

possibility of abuse.  Accordingly, we affirm.

<u>Affirmed.</u>